MARINELAND OF THE PACIFIC, INC., (Formerly Oceanarium, Inc.), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Marineland of the Pacific, Inc. v. Commissioner
Docket No. 5947-71.
United States Tax Court
T.C. Memo 1975-288; 1975 Tax Ct. Memo LEXIS 84; 34 T.C.M. (CCH) 1250; T.C.M. (RIA) 750288; September 17, 1975, Filed Hilbert P. Zarky, for the petitioner. Earl Goldhammer, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax: Taxable Year Ended
Deficiency
April 1, 1967
$21,592.75
March 30, 1968
$22,227.02
March 29, 1969
$16,653.75
The sole issue remaining for decision is whether amounts spent by petitioner for acquisition and erection of two "Sky Towers" qualify for the investment credit provided *85 by section 38. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are accordingly so found. Petitioner is a corporation whose principal place of business was Palos Verdes Peninsula, California at the time it filed its petition. Petitioner filed its tax returns for the taxable years in issue with the district director in Los Angeles, California. Petitioner operates "Marineland," a business at Palos Verdes Peninsula, California, where it displays various species of marine life to the general public in an educational and recreational setting. It has a "Sky Tower" located on those grounds. Petitioner operates another "Sky Tower" at Atlantic City, New Jersey. Petitioner acquired and erected its "Sky Tower" in California during its taxable year ended April 1, 1967, and acquired and erected its "Sky Tower" in New Jersey during its taxable year ended March 30, 1968. Petitioner acquired both "Sky Towers" from Willy Buhler, AG Bern, Berne, Switzerland. The following is a description of the "Sky Tower" at Marineland: A. Structure. The structure is basically *86 a steel tower with an overall approximate height of 338 feet. The tower is supported by a poured reinforced steel concrete base. B. Steel Tower. The Tower is comprised of 10 tubular steel sections, 8 feet in diameter, of a graduated thickness varying from 3 inches at the bottom to 7/16 of an inch at the top. The sections are fastened to the base and to each other by steel bands and bolts. Two steel guide rails, approximately 6 inches in width, are fastened to the exterior of the tower, 180 degrees apart, and extend from the base to the top of the tower. These rails guide a collar which encircles the tower and supports the gondola. Connected to the tower are copper contact slip rings which run substantially its entire length and which serve as the source of electrical power for the collar motor (which turns the gondola) and the gondola lights. C. Motor Housing. Located at the top of the tower is an enclosed area approximately 14 feet in diameter and 9 feet in height which houses two electrical motors which function to operate the hoisting mechanism, consisting of cables, pulleys and counterweight located in the interior of the tower. D. Beacon Light. There is a beacon *87 light which is required by the rules and regulations of the Federal Aviation Agency. E. Electrical Component Area. There is a separate building which is approximately 100 feet away from the tower. The building covers an area approximately 15 feet by 11 feet, has a height of approximately 8 feet, and houses the electrical panels, main power controls and the main and auxiliary generators. F. Gondola. The gondola is a 60-passenger, two level vehicle which encircles the tower and is constructed of steel and plexiglass. Powered by two electric motors, the gondola rotates around the tower. The gondola rotates on a large slewing ring (thrust bearing), which rests on the collar. The gondola is ventilated by six fans. It has a plastic interior with seating. G. Cables. Six steel cables are fastened to each side of the lifting carriage. These cables extend upward on the outside of the tower, passing through pulleys located at the top of the tower, running then into the interior of the tower, where they are fastened to a counter-weight which rises and falls through the center of the tower. H. Operator Controls. The operator station, which contains the controls which start *88 and stop the ride cycle, is located inside the gondola. I. Operation and Ride Cycle. When the gondola is at the bottom of the tower and stationary, the passengers are loaded into it. They sit on seats facing away from the tower, looking out upon the surrounding area through the gondola's plexiglass exterior. After the door of the gondola is securely latched, the operator starts the ride cycle by pushing a button located at the control station. The gondola rises, slowly rotating around the tower. When the gondola reaches the top of the tower, it remains there long enough to make one complete rotation, giving the passengers a panoramic view of the area from the top of the tower. After this, it descends at the same rate as it rose, rotating until it reaches the loading platform. Once there the door of the gondola is then opened by the operator, and the passengers exit. The entire ride cycle is four and three-quarters minutes in duration. J. The "Sky Tower" contains no space for anything except the machinery and equipment necessary for its operation. K. There is access to the tower which permits maintenance and inspection. The "Sky Tower" at Atlantic City is identical except *89 that it is 26 feet shorter and the foundation consists of a base supported by 52 pilings 85 feet deep. On its income tax returns for the taxable years ended April 1, 1967 and March 30, 1968, petitioner computed its investment credit on the "Sky Towers" on the basis of the entire cost of purchase and assembly of each tower. Respondent apportioned the total cost among specific components of the "Sky Towers" and determined that some did and some did not qualify as "section 38 property" on the ground that a portion of the costs incurred related to machinery and equipment, for which the investment credit was available, and that the rest of the cost related to a permanent structure which did not qualify for the investment credit. Prior to shipping the "Sky Towers" to petitioner, the manufacturer in Switzerland fitted and bolted together adjoining sections of the structures to be certain that bolt holes and band holdes were properly placed. The various sections of the "Sky Towers" were fitted together at their ultimate locations with the help of a crane. The total erection took place in about 10 days. The "Sky Towers" were sturdily constructed to withstand the stresses of winds and *90 possible earthquakes. Being bolted together, rather than held together by welded bands, the sections of the "Sky Towers" could be dismantled and sold to another operator. The bottom section of the tower would be lost in such disassembling, but a new one could be obtained from the manufacturer. The foundations on which the towers rested would also be lost. OPINION The only issue in this case is whether the "Sky Towers" are "section 38 property," as that term is defined in section 48(a)(1), and thus eligible for the investment credit. Petitioner contends the towers constitute "tangible personal property" under section 48(a)(1)(A), and that consequently petitioner is entitled to an investment credit for all the costs incurred by it in acquiring and erecting the towers. Alternatively, petitioner contends the towers are "elevators" within the meaning of section 48(a)(1)(C). Respondent disallowed the investment credit insofar as it related to the cost of acquiring and erecting the steel towers themselves (including their foundations), but allowed the credit for the remaining costs of the "Sky Towers." Respondent maintains that the steel towers are not tangible personal property within *91 the meaning of section 48(a)(1)(A) or elevators within the meaning of section 48(a)(1)(C), but are "inherently permanent structures" which are not items of machinery and that the credit is therefore not allowable. The investment credit is allowed only for "section 38 property," which is defined by section 48(a) [2] to include, among other items, "tangible personal property." Section 1.48-1(c), Income Tax Regs., defines "tangible personal property" as follows: (c) Definition of tangible personal property. If property is tangible personal property it may qualify as section 38 property irrespective of whether it is used as an integral part of an activity (or constitutes a research or storage facility used in connection with such activity) specified in paragraph (a) of this section. Local law shall not be controlling for purposes of determining whether property is or is not "tangible" or "personal". Thus, the fact that under local law property is held to be personal property or tangible property shall not be controlling. Conversely, property may be personal property for purposes of the investment credit even though under local law the property is considered to be a fixture and therefore *92 real property. For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures). Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are not tangible personal property. Tangible personal property includes all property (other than structural components) which is contained in or attached to a building. Thus, such property as production machinery, printing presses, transportation and office equipment, refrigerators, grocery counters, testing equipment, display racks and shelves, and neon and other signs, which is contained in or attached to a building constitutes tangible personal property for purposes of the credit allowed by section 38. Further, all property which is in the nature of machinery (other than structural components of a building or other inherently permanent structure) shall be considered tangible personal property even though located outside a building. Thus, for example, a gasoline pump, hydraulic car lift, or automatic vending *93 machine, although annexed to the ground, shall be considered tangible personal property. Respondent points out that the steel towers are inherently permanent structures because they were solidly constructed to support the gondolas in all weather conditions and affixed to the ground either in a foundation of poured concrete (in the case of the California tower) or by 52 pilings 85 feet deep (in the case of the New Jersey tower). Petitioner offered evidence to show that the towers can be moved. On one occasion a similar tower was moved. We do not think their possible mobility alone is sufficient to warrant our holding that *94 the towers are not inherently permanent structures. C. C. Everhart,61 T.C. 328 (1973). The real issue in this case is whether the steel towers were items of machinery inseparable from or forming an integral mechanism with the rest of the "Sky Towers," which the respondent has conceded is machinery and equipment and therefore section 38 property. Earlier, in Beverly R. Roberts,60 T.C. 861 (1973), respondent had taken the position that under section 1.48-1(c), Income Tax Regs., "tangible personal property" excluded "inherently permanent structures" even if in the nature of machinery. Later, in Joseph B. Weirick,62 T.C. 446 (1974), respondent changed his position and contended that if an inherently permanent structure were determined to be property in the nature of machinery, and otherwise qualified as an item of personal property, it would qualify as section 38 property. We hold that the steel towers in this case are property in the nature of machinery because they are an integral part of the "Sky Towers" machinery, and that they therefore constitute section 38 property. The facts in this case are analogous to those in Weirick, *95 which involved the question whether cable-support and holddown towers located between the terminal towers of a chair-type ski lift were "tangible personal property." In both cases the permanent structures (steel towers) are an integral part of the whole apparatus which was designed solely to move people--up ski slopes in Weirick and up and down "Sky Towers" in this case. In this case the steel towers perform no function other than to provide a guide for the gondolas and to provide the mechanical and electrical mechanisms to permit the gondolas to ascend and descend. [3] No portion of the physical property is capable of operation without the rest. Moreover, in both Weirick and this case, we believe the entire mechanisms represent the kind of investment in property which Congress was intent on encouraging. See S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 716-717. "Tangible personal property" is not intended to be defined narrowly. H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 415. Respondent argues that this case is governed by Beverly R. Roberts,supra, *96 in which this Court held that the "Astro Needle" involved in that case did not qualify for the investment credit. However, as pointed out in Weirick, and as noted earlier, respondent's position in Roberts was modified by the time Weirick was litigated, and respondent's position here is the same as his position in Weirick. As a result, Weirick, rather than Roberts, is controlling. In view of our above holding, we need not reach the question whether the "Sky Towers" are "elevators" within the meaning of section 48(a)(1)(C). Cf.Joseph B. Weirick,supra.Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.↩
2. Section 48(a) reads in relevant part as follows: (1) In general.--Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property, or * * *
(C) elevators and escalators, but only if-- (i) the construction, reconstruction, or erection of the elevator or escalator is completed by the taxpayer after June 30, 1963, or (ii) the elevator or escalator is acquired after June 30, 1963, and the original use of such elevator or escalator commences with the taxpayer and commences after such date. * * *↩
3. Respondent concedes that "Sky Towers" are not buildings.↩